UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BROWN,<br><br>  Plaintiff,<br><br> v.<br><br>S.H. WONG,<br><br>  Defendant. | Case No. 2:20-cv-01673-DAD-JDP (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Brown, a former state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983, alleges that defendant Wong violated his Eighth Amendment rights by refusing to provide specialized treatment for his feet. Defendant moves for summary judgment, arguing that plaintiff cannot show that he was deliberately indifferent to a serious medical need or, in the alternative, that he is entitled to qualified immunity. ECF No. 70. Plaintiff failed to timely respond to defendant's motion for summary judgment. More than 21 days after the court ordered plaintiff to show cause why this case should not be dismissed for failure to prosecute, plaintiff filed a brief opposition that broadly fails to comply with the local rules. ECF No. 74. Nevertheless, given the liberal standard afforded pro se litigants and the prohibition against granting summary judgment by default, I will take these submissions into consideration in

evaluating whether defendant is entitled to summary judgment.[1]  For the reasons below, I recommend that defendant's motion for summary judgment be granted.

**Background**

Plaintiff alleges that he suffers from type II diabetes and nerve damage in his feet.  ECF No. 1 at 3.  On December 8 and 12, 2019, plaintiff submitted two medical requests for defendant—plaintiff's primary care physician while he was incarcerated at Mule Creek State Prison ("MCSP")—to refer him to a podiatrist for treatment of his toenails and feet.  *Id.*  He alleges that his toenails had grown long and thick, and that he had developed corns and calluses on his feet.  *Id.*  He further alleges that specialized care was necessary because, given plaintiff's diabetes and the numbness and nerve pain he experiences in his feet, clipping his own nails posed a risk of injury and a heightened risk of infection and amputation.  *Id.*

Defendant attests that on December 17, 2019, plaintiff saw a nurse at MCSP for treatment related to his feet; and that on December 18, plaintiff saw defendant for treatment of an unrelated shoulder issue.  ECF No. 70-6 at 2.  Defendant scheduled plaintiff for a follow-up appointment on December 20 to attend to his foot conditions, but plaintiff refused that appointment.  *Id.*  In his deposition, plaintiff testified that he believed defendant had already told the "RN that [plaintiff's request] was being denied" and so there was no "use in going back."  ECF No. 70-7 at 87.  Defendant attests that, on February 11, 2020, plaintiff saw a nurse for his toenail concerns and was provided with nail clippers and printed instructions for "Diabetes and Foot Care."  ECF No. 70-6 at 3.  However, plaintiff refused to clip his own toenails and renewed his request to see a podiatrist; he testified that he does not do "self-care" because he read in "a book about diabetes"

---

[1] "[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion."  Fed. R. Civ. P. 56(e) (advisory committee notes to 2010 amendments).  Instead, courts are permitted to consider a fact undisputed if it is not properly addressed or to grant summary judgment if the motion and supporting materials show that the movant is entitled to it.  *See id.*  Caution is particularly warranted in cases with prisoner litigants proceeding pro se, since an unrepresented prisoner's choice to proceed without counsel is often "less than voluntary," and prisoners are subject to the "handicaps . . . [that] detention necessarily imposes upon a litigant," such as "limited access to legal materials . . . [and] sources of proof."  *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65, n.4 (9th Cir. 1986); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (holding that courts have an "obligation to give a liberal construction to the filings of pro se litigants").

1  produced by the American Diabetes Association that cuts and sores do not heal properly in
2  diabetics and therefore carry a unique risk of infection. ECF No 70-7 at 96-97. Plaintiff met with
3  medical staff again on February 21 and March 4, and was provided printed instructions for
4  tending to his foot conditions. ECF No. 70-6 at 3.
5        Defendant attests that he referred plaintiff to a podiatrist on March 4, but that on April 1,
6  2020, the referral was denied due to the COVID-19 pandemic. *Id.* Defendant sent plaintiff a
7  letter regarding the denial:

> A referral to podiatry is reasonable but not essential to be performed at this time. Due to the COVID-19 pandemic National Emergency, California statewide emergency, current limited SCP resources, direction of CDCR/CCHCS and to minimize person-person contact in and outside the institution . . . all non-emergent requests for Podiatry, Orthotics, and Specialty Care Referrals and follow-ups (Including telemedicine) are being canceled.

12  *Id.* In his deposition, plaintiff confirmed that he received both this letter and an April 16 letter
13  from defendant that provided the same reasons for cancelling a "follow-up appointment regarding
14  [p]laintiff's request for a podiatry referral." *Id.*; *see* ECF No. 70-7 at 95 & 100-02. On May 21
15  and 28, defendant submitted two additional referrals for plaintiff to see a podiatrist. ECF No. 70-
16  6 at 4. The Physician Manager at MCSP denied both requests "on the basis that more information
17  was needed" and suggested that plaintiff receive an e-consultation, which defendant ordered on
18  June 3. *Id.* However, on June 8, 2020, the consulting podiatrist, Dr. Hall, responded to the
19  referral by stating that "[plaintiff] would benefit from a face-to-face evaluation and care from a
20  Podiatrist to trim his nails, par his calluses and provide a neurovascular examination." *Id.* at 4-5.
21  Between June 8 and August 24, defendant attempted to refer plaintiff to a podiatrist at least three
22  more times, and plaintiff was seen by defendant or other medical staff at MCSP regarding his feet
23  at least six more times. *Id.* at 5-6. Defendant attests that during that time he provided plaintiff
24  with over-the-counter pain medication, a cane, and the tools and instructions necessary to care for
25  his feet. *Id.* Plaintiff's one-page opposition does not dispute the facts put forth by defendant. *See*
26  ECF No. 74.

**Legal Standard**

28        Summary judgment is appropriate where there is "no genuine dispute as to any material

3

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56(a), (c); M*ora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); s*ee also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts

4

demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 552). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Analysis**

Plaintiff alleges that defendant violated his Eighth Amendment rights by refusing to refer him to a podiatrist for specialized foot care. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).

"This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In his opposition to defendant's motion for summary judgment, plaintiff argues that diabetes is a serious medical need and that defendant was deliberately indifferent to that need "by not allowing [plaintiff] to see the podiat[rist]." ECF No. 74 at 1. Although there is no dispute that diabetics often have serious medical needs, not every medical need by an inmate with diabetes automatically satisfies the first prong of the deliberate indifference test. *Cf. Lolli v. Cty. of Orange*, 351 F.3d 410, 419-20 (9th Cir. 2003) (holding that a diabetic plaintiff had a serious medical need for "proper food or insulin" in light of the "'objectively, sufficiently serious' risk of harm") (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)). Rather, to show that his particular needs were sufficiently serious, plaintiff was required to provide evidence that the "failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904.

Plaintiff makes cursory references to pain and "irreparable harm" in his complaint, ECF No. 1 at 1, but fails to provide a declaration or medical evidence of the severity of his foot problems—any pain they may have caused, the extent to which they affected his daily activities, or other reasons why they required specialized treatment. In plaintiff's deposition, he testified that he learned in a book "from the American Diabetes Association" that "diabetics should see the podiatrist to have their toenails clipped," because "when you get cut and being a diabetic, sores do not heal properly and it can lead to infection." *See* ECF No. 70-7 at 85, 96-97. He also

asserted that he is "entitled to foot care in a correctional facility at least once a year" under the ADA. *Id.* at 85. But he provides no expert testimony, medical evidence, or legal authority to support these statements.[2] Plaintiff has not sufficiently shown that specialized foot care for people with diabetes amounts to a serious medical need.

Even assuming that plaintiff's foot problems were a serious medical need, uncontroverted evidence reflects that defendant consistently provided plaintiff adequate medical care. Plaintiff saw defendant or other medical staff at MCSP for treatment of his foot problems nearly twice each month between December 2019 and August 2020—when plaintiff filed this suit. Defendant ordered medical supplies, a cane, and pain medication as plaintiff needed or requested them. Along with other medical staff at MCSP, defendant provided plaintiff with the tools to administer self-care and directions on how to do so. Importantly, defendant repeatedly referred plaintiff to a podiatrist after March 4, though these referrals were denied by supervisory officials at MCSP until August 24, 2020—when plaintiff received a podiatry visit—due to concerns about in-person visits during the COVID-19 pandemic. *See supra*, page 2-3; ECF No. 7-4 at 6 (declaration of Bennett Feinberg, M.D., Chief Medical Consultant for the California Correctional Health Care Services Office of Legal Affairs). Even if COVID-19 were not a legitimate justification for denying plaintiff's podiatry referrals, the record reflects that "[d]efendant would not have had the authority to disregard or override decisions to deny or reject his referrals to podiatry for [p]laintiff, where such denials or rejections were based on decisions by medical management or policies and directives of CDCR or CCHCS." ECF No. 70-4 at 6.

At most, the record could be interpreted as showing that defendant delayed referring plaintiff to a podiatrist from December 17 through March 4. But this delay does not amount to evidence of deliberate indifference, since plaintiff has not shown that the delay posed any serious

---

[2] Information that plaintiff found in a book by the American Diabetes Association is not admissible at this stage, both because plaintiff has laid no foundation for its admission and because it is hearsay evidence. *See Combs v. Washington*, 660 F. App'x 515, 518 (9th Cir. 2016) (holding that "the district court did not abuse its discretion when it excluded as hearsay several Internet articles about [the plaintiff's] medical conditions"); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) ("[H]earsay evidence is inadmissible and may not be considered by this court on review of a summary judgment [motion].").

risk, or—if it did—that defendant was subjectively aware of that risk, or—even if he was—that the delay caused plaintiff any cognizable harm. *See McGuckin*, 974 F.2d at 1060 (explaining that, when "a claim alleges 'mere delay'" of treatment, "a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful'") (quoting *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (per curiam). Accordingly, on the evidence in the record, no reasonable juror could find that defendant acted with deliberate indifference.[3]

Accordingly, it is hereby recommended that:

1. defendant's motion for summary judgment, ECF No. 70, be granted;

2. plaintiff's claim be dismissed; and

3. the Clerk of Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    May 12, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

---

[3] Because I find that plaintiff has not shown that defendant violated his Eighth Amendment rights, I need not address defendant's qualified immunity defense.

8